John J. Reilly
Corrine Irish
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 872-9800
Telefax:  (212) 872-9815
john.reilly@squirepb.com
corrine.irish@squirepb.com

ATTORNEYS FOR DEFENDANTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOTI SHIPPING LTD.,

         Plaintiff,

    – against –

DNV GL GROUP AS f/k/a DET NORSKE
VERITAS AS, DNV GL AS, DET NORSKE
VERITAS (USA) INC., #50, unknown
companies in the DNV GL GROUP as
corporate family,

         Defendants.

Civil Action No. 1:16-cv-00138-RA

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION, LACK OF PERSONAL
JURISDICTION, FAILURE TO STATE A CLAIM, AND ON A FORUM
SELECTION CLAUSE AND FORUM NON CONVENIENS GROUNDS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ......................................................................................................................... 1

    A. The Defendants ................................................................................................................ 1

    B. Facts Relating to Personal Jurisdiction ........................................................................... 2

    C. Facts Relating to the Forum Selection Clause Designating Norway ................................ 2

    D. The Relevant Agreements Refer to the DNV Rules ........................................................ 4

ARGUMENT ............................................................................................................................... 6

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER MOTI'S
    COMPLAINT ........................................................................................................................ 6

    A. There Is No Maritime Jurisdiction as Alleged in the Complaint ..................................... 6

    B. Moti Cannot Establish Diversity Jurisdiction Under 28 U.S.C. § 1332(a)(2) ................ 7

II.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ............... 8

    A. Moti Alleges No Involvement by DNV USA with the Building of this Vessel ............. 8

    B. Moti Fails to Plead an Actionable Tort Claim Against Defendants ............................. 10

    C. Moti Has Failed to Plead Any Damages Recoverable in Tort ...................................... 12

III.    THERE IS NO PERSONAL JURISDICTION OVER DEFENDANTS .......................... 13

IV.    MOTI'S ACTION MUST BE DISMISSED ON FORUM NON CONVENIENS
    GROUNDS ........................................................................................................................ 17

    A. The Forum Selection Clause In The DNV Rules Is Enforceable Against Moti
    Under the Doctrine of Direct-Benefit Estoppel ........................................................... 17

    B. Moti's Claims Against DNV GL Are Just Like the Shipowners' Claims in
    Tencara, Hellenic, Lloyd's, and Quail ......................................................................... 21

    C. Moti Cannot Avoid The Forum Selection Clause Through Artful Pleading ................ 22

    D. Atlantic Marine Requires Enforcement of the Forum Selection Clause in the
    DNV Rules .................................................................................................................... 23

CONCLUSION ......................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F. 3d 349 (2d Cir. 1999)..............................................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................8

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*,
   134 S. Ct. 568 (2013)............................................................*passim*

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   171 F.3d 779 (2d Cir. 1999).................................................................13

*Barlow v. Liberty Mar. Corp.*,
   746 F.3d 518 (2d Cir. 2014).................................................................10

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*,
   692 F.3d 42 (2d Cir. 2012)....................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................8, 9, 12

*Brown v. CBS Corp.*,
   19 F. Supp. 3d 390 (D. Conn. 2014)..................................................16

*Cain v. Transocean Offshore USA, Inc.*,
   518 F.3d 295 (5th Cir. 2008) ................................................................7

*Cargill, Inc. v. Bureau Veritas*,
   902 F. Supp. 49 (S.D.N.Y. 1995) ..................................................10, 11

*Cfirstclass Corp. v. Silverjet PLC*,
   560 F. Supp. 2d 324 (S.D.N.Y. 2008)................................................22

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
   90 F. Supp. 3d 97 (S.D.N.Y. 2015) ..............................................15, 16

*Daimler AG v. Bauman*,
   134 S.Ct. 746 (2014)......................................................14, 15, 16

*De España v. Am. Bureau of Shipping, Inc.*,
   691 F.3d 461 (2d Cir 2012)................................................................11

-ii-

## TABLE OF AUTHORITIES
(continued)

Page(s)

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
106 S. Ct. 2295 (1986)...................................................................................12, 13

*Eades v. Kennedy, PC Law Offices*,
799 F.3d 161 (2d Cir. 2015)....................................................................................14

*EFKO Food Ingredients Ltd. v. Pac. Inter-Link SDN BHD*,
582 F. Supp. 2d 466 (S.D.N.Y. 2008).......................................................................7

*Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*,
866 F.2d 752 (5th Cir. 1989) ..................................................................................13

*Exxon Corp. v. Cent. Gulf Lines, Inc.*,
500 U.S. 603 (1991).................................................................................................6

*Felske v. Hirschmann*,
No. 10 Civ. 8899, 2012 U.S. Dist. LEXIS 29893 (S.D.N.Y. Mar. 2, 2012) ...................13, 15

*Goodyear Dunlop Tires Operations v. Brown*,
131 S.Ct. 2846 (2011)........................................................................................15, 16

*Great Am. Ins. Co. v. Bureau Veritas*,
338 F. Supp. 999 (S.D.N.Y. 1972), *aff'd* 478 F.2d 235 (2d Cir. 1973)............................10, 11

*Gucci Am., Inc. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014).....................................................................................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)................................................................................................16

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas*,
No. H-04-3010, 2005 U.S. Dist. LEXIS 34023 (S.D. Tex. July 19, 2005) ............................22

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas*,
464 F.3d 514 (5th Cir. 2006) ......................................................................... *passim*

*Hollister v. Luke Constr. Co.*,
517 F.2d 920 (5th Cir. 1975) (per curiam)...............................................................7

*Homen v. M/V SCM Tepuy II*,
No. 05-61626-CIV, 2006 U.S. Dist. LEXIS 93061 (S.D. Fla. Aug. 1, 2006) ........................24

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*,
38 F.3d 1279 (2d Cir. 1994).....................................................................................13

010-8199-7662/8/AMERICAS

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Keene Corp. v. United States*,
    700 F.2d 836 (2d Cir. 1983)..........................................................................6, 7

*Kiobel v. Royal Dutch Petroleum Co.*,
    621 F.3d 111 (2d Cir. 2010)..........................................................................9, 15

*LaRoss Partners, LLC v. Contact 911 Inc.*,
    874 F. Supp. 2d 147 (E.D.N.Y. 2012) .........................................................18, 22

*In re Lloyd's Register N. Am., Inc.*,
    780 F.3d 283 (5th Cir. 2015) ........................................................................20, 22

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003).........................................................................13

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)..........................................................................6

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014).........................................................................17

*Messina v. Ocean Repair Serv., Co.*,
    No. 86 Civ. 7898, 1991 U.S. Dist. LEXIS 8135 (S.D.N.Y. June 17, 1991).............13

*Nielsen v. AECOM Tech. Corp.*,
    762 F.3d 214 (2d Cir. 2014).........................................................................9

*OOO "Garant-S" v. Empire United Lines Co.*,
    No. 13-1685-cv, 2014 U.S. App. LEXIS 2317 (2d Cir. Feb. 7, 2014) ..................10

*Otto Candies v. Nippon Kaiji Kyokai Corp.*,
    346 F.3d 530 (5th Cir. 2003) ........................................................................11

*Owens-Illinois, Inc. v. U.S. Dist. Court for the W. Dist. of Wash.*,
    698 F.2d 967 (9th Cir. 1983) ........................................................................7

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981).....................................................................................25

*Quail Cruise Ship Mgmt. Ltd. v. Agencia de Viagens CVC Tur Limitada*,
    No. 09-23248-CIV, 2010 U.S. Dist. LEXIS 36689 (Apr. 14, 2010) ....................20, 21, 22, 23

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir.1993)........................................................................22

-iv-

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping*,
  744 F. Supp. 447 (S.D.N.Y. 1990) .................................................................13

*Sundance Cruises Corp. v. Am. Bureau of Shipping*,
  7 F.3d 1077 (2d Cir. 1993)...............................................................................10, 11

*Sundance Cruises Corp.v. Am. Bureau of Shipping*,
  799 F. Supp. 363 (S.D.N.Y. 1992) ....................................................................12

*Thames Towboat Co. v. The Schooner "Francis McDonald,"*
  254 U.S. 242 (1920)...........................................................................................6

*Tjontveit v. Den Norske Bank ASA*,
  No. H-96-3579, 1998 U.S. Dist. LEXIS 11929 (S.D. Tex. Mar. 27, 1998) ...........24

*Vloeibare Pret Ltd. v. Lloyd's Register N. Am., Inc.*,
  No. 4-13-3653, 2014 U.S. Dist. LEXIS 109558 (S.D. Tex. Aug. 8, 2014)..........21, 22

*Vloeibare Pret, Ltd. v. Lloyd's Register North America, Inc.*,
  606 Fed. Appx. 782 (5th Cir. 2015)................................................................20, 22, 24

*Whitaker v. Fresno Telsat, Inc.*,
  87 F. Supp. 2d 227 (S.D.N.Y. 1999)................................................................13

**Statutes and Rules**

28 U.S.C. § 1332(a)(2) ............................................................................................7

28 U.S.C. § 1333 ....................................................................................................7

Fed. R. Civ. P. 12(b) ..............................................................................................1, 6, 13

N.Y. C.P.L.R. §302..................................................................................................16

**Other Authorities**

1 Benedict on Admiralty § 182 (2005) .....................................................................7

G. Gilmore and C. Black, The Law of Admiralty 26 (2d ed. 1975)..............................6

010-8199-7662/8/AMERICAS

## PRELIMINARY STATEMENT

Pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, and the doctrine of *forum non conveniens*, Defendants DNV GL Group AS ("DNV GL Group"), DNV GL AS ("DNV GL"), and Det Norske Veritas (U.S.A.), Inc. ("DNV USA") move to dismiss the Complaint of Moti Shipping Ltd. ("Moti" or "Owner")  (1) for lack of subject matter jurisdiction, (2)  for lack of personal jurisdiction, (3) upon the doctrine of *forum non conveniens* because of a mandatory forum selection clause, and, (4) for failure to state a plausible claim for relief.

Moti, a Hong Kong corporation, complains of services provided by a Norwegian ship classification society for an ocean-going bulk carrier, the M/V Darya Moti ("Vessel"), built in South Korea, and registered under the Hong Kong flag.  Moti alleges that Defendants acted negligently in performing classification services during the construction of the Vessel and then in issuing a Class Certificate that did not disclose alleged defects in the Vessel.  Moti's claims should be dismissed on several independent grounds.

## BACKGROUND

### A.    The Defendants

DNV GL is a Norwegian corporation headquartered in Høvik, Norway.   Dugstad Decl. ¶ 3.   DNV GL is a wholly-owned subsidiary of DNV GL Group, which also is a Norwegian corporation headquartered in Høvik, Norway.   *Id.* at ¶¶ 3-4. Contrary to the Complaint, DNV GL Group was not formerly known as "Det Norske Veritas AS."  *Id.*  DNV

USA is a Texas corporation[1] with its principal place of business in the Houston, Texas area. Dugstad Decl. ¶ 5.

### B.    Facts Relating to Personal Jurisdiction

The M/V Darya Moti was built in South Korea by non-party STX Offshore & Shipbuilding Co. Ltd. ("Builder"), a South Korean entity, and delivered to Moti in 2010. Exhibit 2, Complaint at ¶ 22.  On January 8, 2014 while on a voyage from Indonesia the Vessel allegedly lost steering.  Exh. 2, Compl. ¶¶ 1, 2.  That incident occurred off the coast of Africa. The Vessel was towed to a discharge port in Bridgeport, Connecticut where an employee from DNV USA's Mahwah, New Jersey office boarded the Vessel to conduct a post-incident survey. *Id.*  That survey was the first contact of any kind by a DNV USA employee with the Vessel. Krogsgaard Decl. at ¶ 6.

DNV GL Group and DNV GL are not registered to do business in New York and do not have any contacts with New York.  Dugstad Decl. ¶¶ 22, 23 and 24.  DNV USA has limited contacts with New York, and is not and does not consider itself at home in New York. Krogsgaard Decl. at ¶ 8.  DNV GL Group and DNV GL do not conduct business in New York through DNV USA.  Dugstad Decl. ¶¶ 22, 23 and 24.

### C.    Facts Relating to the Forum Selection Clause Designating Norway

DNV GL is a Norwegian corporation engaged, *inter alia*, in ship classification services. As a classification society, DNV GL's role is to (i) promulgate Rules for Classification of Ships ("DNV Rules"), which establish requirements for designers' and builders' design and

---

[1] DNV USA is a wholly-owned subsidiary of DNV Holding (U.S.A.), Inc. ("DNV Holding"), which is not a named party in this lawsuit.  DNV Holding is a Texas corporation with its principal place of business in Houston, Texas. DNV Holding is a wholly-owned subsidiary of DNV GL.

construction of ships, as well as for ships in service, and (ii) verify that the requirements of the Rules are met during design, construction, and operation of the ship. Dugstad Decl. ¶ 6. DNV GL does not design ships for owners or shipbuilders nor guarantee that the ships are designed and built in compliance with the requirements following from the DNV Rules; such remains the responsibility of the designer and the builder. *Id.* at ¶7. Once a ship in DNV GL class is delivered from the builder to the owner, the owner has the responsibility to ensure that the ship complies with the DNV Rules during the operative phase. *Id.* at ¶8. DNV GL verifies that a ship complies with the applicable parts of the DNV Rules via a fleet in service survey. If a ship is not in compliance with the DNV Rules at the time of a fleet in service survey, DNV GL will issue a statement of non-compliance or "Condition of Class" to the ship; it is then the responsibility of the owner to address the noncompliance in order to bring the ship into compliance with the DNV Rules.[2] *Id.* Most significantly, each Classification Certificate issued by DNV GL expressly states that the Certificate is "[i]ssued under the provisions of the Rules of DNV." *Id.* at ¶10.

Ship classification provides a number of major benefits for shipowners. For example, unless a ship is entered with a recognized classification society (such as DNV GL) and has a valid Classification Certificate, the ship cannot obtain insurance.[3] *Id.* at 9.

In addition to the provisions of the DNV Rules relating to design, construction and operational requirements for ships entered with DNV GL, the relevant provisions of the DNV

---

[2] DNV GL also issues statutory certificates pursuant to authority given by the ship's flag state. *Id* at ¶6. However, no claim arising from any statutory certificate has been alleged.

[3] *See generally,* discussion in *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F. 3d 349, 153 (2d Cir. 1999), *infra* at 18-21.

Rules provide for the exclusive jurisdiction in Norway to resolve any dispute involving the DNV

Rules and DNV GL's performance:

> **A300   Governing Law**
>
> 301   These rules, the classification of the ship or unit and the relationship between the
> Society and other parties shall be governed by Norwegian law.
>
> **A400   Venue**
>
> 401   Any dispute arising in relation to or as a consequence of these Rules shall only be
> resolved by the courts of Norway, the Municipal Court of Oslo being the proper
> venue.

Dugstad Decl. ¶ 11; Exh. 1, DNV Rules, Sect. 5 ¶¶A300, A400.

The forum selection clause and choice of law provision in the DNV Rules are extremely

important to DNV GL.   To ensure that any disputes are resolved in a single jurisdiction that

applies a consistent body of substantive law and procedure as well as interpretation of the DNV

Rules, DNV GL requires that suits arising from or related to the issuance of its Classification

Certificates and performance and application of the DNV Rules be brought in the Courts of Oslo,

Norway and apply Norwegian law.   Those provisions have been included in the DNV Rules for

many years, and certainly well before the M/V Darya Moti was entered into class with DNV GL.

Dugstad Decl. ¶¶ 11, 12.

### D.      The Relevant Agreements Refer to the DNV Rules

On or about September 30, 2009, the Builder and Moti entered into a shipbuilding

contract ("2009 Shipbuilding Contract") for the Vessel to be completed in 2010.[4]   Exh. 2,

Compl. ¶ 23.   DNV GL was not party to the 2009 Shipbuilding Contract.   On or about May 14,

2010, the Builder entered into a contract with DNV GL to provide class services, that is,

---

[4] The 2009 Shipbuilding Contract was signed by Sur Navigation Ltd., which allegedly is now known as Moti.
(Exh. 2, Compl. ¶ 23).

verification of compliance with the DNV GL Rules, for the completed Vessel to be delivered to Moti.  *See* Exh. 3, Standard Agreement for Classification of Newbuilding Between STX Offshore & Shipbuilding Co., Ltd. and Det Norske Veritas AS ("2010 Classification Agreement").  That 2010 Classification Agreement was entered into following an October 14, 2009 Request for Classification ("2009 Classification Request") submitted by the Builder to DNV GL.  *See* Exh. 4.  Section 1.2 of the 2010 Classification Agreement between STX and DNV GL refers to Moti's 2009 Shipbuilding Contract with the Builder.  It states that "[t]he vessel is being built subject to an agreement between the party who have ordered the vessel and the Builder, dated 2009-09-30."  Exh. 3, 2010 Classification Agreement.  Section 2.1 of the 2010 Classification Agreement states that: "The DNV Rules for Classification of Ships, dated Jan. 2007, shall apply including applicable Classification Notes and Standards for Certification issued by DNV."

The Vessel was delivered by the Builder to Moti on or about October 21, 2010.  Dugstad Decl. ¶ 17.  On the date of delivery, DNV GL issued a Certificate of Interim Class and an Appendix to the Certificate, *see* Exh. 5, Certificate of Interim Class and Appendix, certifying that the Vessel's hull, machinery and equipment were in compliance with the applicable DNV Rules requirements for the following class notation: "1A1 Bulk Carrier ESP ES(S) CSR BC-A Holds 2, 4 and 6 may be empty; BIS TMON BWM-E(f) E0 GRAB[20]."  *Ibid.*  That Certificate of Interim Class and Appendix was issued "under the provisions of the Rules of Det Norske Veritas."  Exh. 5.  After Moti took delivery of the Vessel, DNV GL continued to provide Moti with classification services for the M/V Darya Moti.  (*See* Exh. 6, the 2011 DNV GL-Moti Agreement).  DNV GL continues to provide those services to the present day.  (Exh. 7, 2015 Periodical Service Agreement).  Each Agreement contains forum selection and choice of law

-5-

clauses requiring disputes to be brought in Oslo, Norway and determined pursuant to Norwegian law.  *See* Exh. 1, the DNV Rules Sect. 5 ¶¶ A300, A400; Exh. 4, 2009 Classification Request Section 1.2 and Section 2.1; Exh. 5, Certificate of Interim Class and Appendix.

## ARGUMENT

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER MOTI'S COMPLAINT

This action should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  A plaintiff asserting subject matter jurisdiction has the burden of proof on the issue.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### A.   There Is No Maritime Jurisdiction as Alleged in the Complaint

Moti's Complaint alleges tortious conduct arising from DNV GL's contractual obligation to survey and render class services to the Vessel during construction.  *See* Exh. 2, Compl. ¶¶ 25, 47, 49, 57.  The touchstone of admiralty jurisdiction is whether the services rendered are maritime in nature.  *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 612 (1991).  Contracts for shipbuilding and contracts for services to a ship laid up and out of navigation are non-maritime contracts and not subject to maritime jurisdiction.  *Keene Corp. v. United States*, 700 F.2d 836, 844 (2d Cir. 1983) (citing G. Gilmore and C. Black, The Law of Admiralty 26 (2d ed. 1975)); *see also Thames Towboat Co. v. The Schooner "Francis McDonald,"* 254 U.S. 242, 243, 244 (1920) (observing that a contract for the complete construction of a ship or supplying

materials is non-maritime and not within the admiralty jurisdiction and ruling that this extends to contracts for partial construction as well.).[5]

Similarly, a tort arising out of work on an uncompleted vessel falls outside admiralty jurisdiction. *Keene Corp.*, 700 F.2d 836 at 844; *Hollister v. Luke Constr. Co.*, 517 F.2d 920, 921 (5th Cir. 1975) (per curiam); *Owens-Illinois, Inc. v. U.S. Dist. Court for the W. Dist. of Wash.*, 698 F.2d 967, 970 (9th Cir. 1983) (tort claims arising from asbestos exposure during new ship construction do not bear a significant relationship to traditional maritime activity). "[V]essels under construction give rise to neither a maritime contract nor a maritime tort" claim. *See Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 301 (5th Cir. 2008). This widely accepted principle forecloses Moti's reliance on maritime jurisdiction under 28 U.S.C. § 1333.

### B.    Moti Cannot Establish Diversity Jurisdiction Under 28 U.S.C. § 1332(a)(2)

Diversity is lacking within the meaning of 28 U.S.C. § 1332(a)(2) "where on one side there are citizens and aliens and on the opposite side there are only aliens." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); (quoting *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002)). Here, on one side is Moti, a Hong Kong entity and on the other two Norwegian entities (DNV GL and DNV GL Group). *See* Compl. ¶¶ 9-11. Moti's cynical injection of DNV USA into this controversy, solely

---

[5] As this Court (McMahon, U.S.D.J.) has stated:

> "In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping."

*EFKO Food Ingredients Ltd. v. Pac. Inter-Link SDN BHD*, 582 F. Supp. 2d 466, 470 (S.D.N.Y. 2008) (quoting 1 Benedict on Admiralty § 182 (2005)).

to establish some toehold for diversity and personal jurisdiction (as discussed below), is in vain. [6]

Moti's Complaint should be dismissed for lack of subject matter jurisdiction.

## II.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A complaint should be dismissed where the plaintiff cannot state facts that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Moti's Complaint fails to state a plausible claim for relief against the Defendants on several independent grounds.

### A.    Moti Alleges No Involvement by DNV USA with the Building of this Vessel

Moti's claims against DNV USA should be dismissed on the separate and distinct ground of its complete non-involvement with the Vessel.  DNV USA's first contact with the Vessel was a post-incident survey.  Krogsgaard Decl. ¶ 6.  The allegations against DNV USA are nothing more than a jurisdictional hook to try to establish a basis for filing suit in this Court.  Indeed, the only mention of DNV USA in the Complaint is in the introductory paragraph, *see* Exh. 2, Compl. ¶ 1, and in the section of the Complaint identifying the parties, *see* Compl. ¶¶ 12, 15-16.  DNV USA is entirely absent from the "Factual Allegations" section of the Complaint.  *See Id.* ¶¶ 22-65.  Instead, Moti refers vaguely to "one or more Defendants" with regard to many of the factual allegations central to the claims itself, without identifying the specific Defendant involved in the activities that serve as the basis for Moti's claims.  *Id.*

---

[6] In fact, the only contact of DNV USA with the Vessel was *after* the incident, when a surveyor from DNV USA's Mahwah, New Jersey office attended to perform the post-incident survey in Bridgeport, Connecticut.  Krogsgaard Declaration ¶ 6; Exh. 8 Survey Reports.

The Complaint presents no support for the proposition that DNV USA, a Texas corporation headquartered in Texas, was "one or more of the Defendants" purportedly involved in the "design and build process" of a ship built in South Korea sometime prior to 2010.  *See* Compl. at ¶¶ 12, 22, 28; *see also* Compl. at ¶¶ 45, 47, 52-54 (referring vaguely to "one or more Defendants" or generally to "Defendants").  Moti's allegations "upon information and belief" identify either "Defendant Group or DNV GL AS" - not DNV USA - as the classification society during construction.  *See* Compl. ¶ 25.  Further, Moti has proffered factual allegations indicating that either "Defendant Group and/or Defendant DNV GL AS"-not DNV USA- were involved in surveying the Vessel during construction and prior to its delivery to the Owner.  *See Id.* ¶ 59.  Moti's vague pleadings invite nothing more than improper speculation that DNV USA could have been one of the Defendants Subject to Moti's claims.  *See Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679) ("A motion to dismiss should be granted 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"); *Twombly*, 550 U.S. at 555 (holding that to state a plausible claim, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level.").  There are no allegations that can support claims of negligence and negligent misrepresentation or recklessness against DNV USA.

Moti's deficient alter ego allegations cannot serve to establish any plausible claim for liability on the part of DNV USA.  Even assuming the alter ego allegations were plausible, "[a]lter ego liability exists when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111,

-9-

195 (2d Cir. 2010) (internal quotation marks omitted).  Liability attaches where the actions of its corporation or subsidiary are imputed to a parent or owner, not the other way around.  *See, e.g., OOO "Garant-S" v. Empire United Lines Co.*, No. 13-1685-cv, 2014 U.S. App. LEXIS 2317, *13-14 (2d Cir. Feb. 7, 2014) (determining that sole shareholder of company was not its alter ego and therefore not liable for the company's judgment).  There is no legal or factual basis for imputing liability to DNV USA based on allegations made against related or parent companies.

DNV USA should be dismissed from this action based on Moti's failure to state a plausible claim against it.  Absent DNV USA as a party, there is no argument that this case should remain in this Court.

### B. Moti Fails to Plead an Actionable Tort Claim Against Defendants

The shipowner, not the classification society, is "ultimately responsible for and in control of the activities aboard ship," and therefore "the shipowner has a *nondelegable* duty to furnish a seaworthy vessel."  *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 7 F.3d 1077, 1084 (2d Cir. 1993) (emphasis added); *see Barlow v. Liberty Mar. Corp.*, 746 F.3d 518, 528 (2d Cir. 2014) ("In admiralty, ship owners are strictly liable for injury resulting from the unseaworthiness of their vessel and the vessel's appurtenances.").  As New York courts have recognized:

- The services performed by classification societies (ensuring compliance with their own rules or statutory standards) are of limited scope.  *See Great American Insurance Co. v. Bureau Veritas,* 338 F. Supp. 999, 1015 (S.D.N.Y. 1972), *aff'd*, 478 F.2d 235 (2d Cir. 1973).

- The surveys performed are limited to the ship's condition at the time of the specific survey.  *See Cargill, Inc. v. Bureau Veritas*, 902 F. Supp. 49, 53. (S.D.N.Y. 1995).

-10-

- A classification society "is functionally incapable of repairing or rectifying defects." *Great Am.*, 338 F. Supp. at 1015.[7]

In that vein, the Second Circuit has rejected a shipowner's attempt to sue the classification society that the owner hired to perform surveys and classification (*see Sundance Cruises Corp.*, 7 F.3d at 1084) – likely one of the reasons why this action does not challenge the classification services Moti contracted for directly with DNV GL in the years following delivery of the ship build (the other reason being those services are clearly subject to jurisdiction in Oslo, Norway).  Although the Second Circuit left open the possibility of a suit "brought by an injured third party who relied on the classification or safety certificates,"[8] it is clear that in any such third party suit, a shipowner is not entitled to rely on a classification certificate or survey "as a guarantee to the owner that the vessel is soundly constructed."  *See Sundance*, 7 F.3d at 1084. *Otto Candies v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 538 (5th Cir. 2003) ("The [classification society's] certificate or survey in no way guarantees a vessel's seaworthiness.").[9] Moti is not seeking liability for negligence or recklessness, Moti is seeking to turn DNV GL into an insurer or guarantor for any and all losses, regardless of whether such losses actually arose within the scope of services DNV GL provided.  To the extent that there remains an actionable tort claim against a classification society under U.S. law after these cases, *but see De España v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461, 462-63 (2d Cir 2012) (indicating that it remains an

---

[7] Courts thus have recognized that the "[i]mposition of undue liability on classification societies could be harmful in several ways," including that "[t]he societies could be deterred by the prospect of liability from performing work on old or damaged vessels that most need their advice," and "[t]he spreading of liability could diminish owners' sense of responsibility for vessel safety even as it complicates liability determinations."  *Otto Candies v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 535 (5th Cir. 2003).

[8] *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 7 F.3d 1077, 1084 (2d Cir. 1993).

[9] *See also Cargill, Inc. v. Bureau Veritas*, 902 F. Supp. 49, 52 (S.D.N.Y.1995) ("It is well-established that a classification society is not liable to a shipowner as an insurer of the seaworthiness of a vessel."); *Great Am. Ins. Co. v. Bureau Veritas*, 338 F. Supp. 999, 1012 (S.D.N.Y. 1972) ("[M]aking the classification society an absolute insurer of any vessel it surveys and certifies" is "not commensurate with the amount of control that a classification society has over a vessel," and "it is also not in accord with the intent of the parties, the fees charged or the services performed"), *aff'd* 478 F.2d 235 (2d Cir. 1973).

-11-

open question whether a classification society such as DNV GL may be held liable in tort to a third party for either negligent conduct or reckless conduct in connection with the classification of vessels), it is plainly not present here.  Moti thus fails to state a cause of action against Defendants for negligence, negligent misrepresentation[10] or recklessness "that is plausible on its face."  *Twombly*, 550 U.S. at 570.

### C.      Moti Has Failed to Plead Any Damages Recoverable in Tort

Moti's Complaint also should be dismissed because Moti has failed to plead any damages recoverable as a matter of law under a tort theory.  The Supreme Court has made clear that when the only injury alleged involves the failure of a ship to function properly, the purchaser suffers a purely economic loss that is not recoverable in tort.  *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 106 S. Ct. 2295, 2300 (1986) (holding that "the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain.").

Here, Moti seeks damages against Defendants for "no less than $8,000,000.00" in this "tort action involving the rudder horn and rudder stock of [the Vessel]."  Compl. ¶ 1; *see also Id.* ¶ 76.  As its allegations make clear, Moti is seeking recovery for damages to the Vessel itself arising from alleged defects in the rudder.  Moti entered into the 2009 Shipbuilding Contract with the Builder, and the damages to repair the Vessel clearly are contract damages.  *See E. River*, 106 S. Ct. at 2302 ("Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain – traditionally the core

---

[10] Moti's claims of recklessness are derived from its negligence claims essentially asserting that "defendant has not only acted carelessly in making a mistake, but that it was so extremely careless that it was equivalent to recklessness,"  *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 799 F. Supp. 363, 378 (S.D.N.Y. 1992).

010-8199-7662/8/AMERICAS

concern of contract law."). The case law makes clear that Moti cannot recover in maritime tort for purely economic loss stemming from the reckless or negligent performance of a contract for professional services rendered as part of the Vessel's construction. *See Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 755 (5th Cir. 1989) ("[T]he economic loss rule adopted in the *East River* case precludes recovery in maritime tort for purely economic loss stemming from the negligent performance of a contract for professional services where those services are rendered as part of the construction of a vessel").[11]

## III.   THERE IS NO PERSONAL JURISDICTION OVER DEFENDANTS

Alternatively, Moti's claims should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. "A motion to dismiss must be granted if a court lacks personal jurisdiction over a defendant." *Felske v. Hirschmann*, No. 10 Civ. 8899, 2012 U.S. Dist. LEXIS 29893, *9 (S.D.N.Y. Mar. 2, 2012). District courts resolving issues of personal jurisdiction must "determine whether there is jurisdiction over the defendant under the relevant forum state's law[s]." *Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227, 229 (S.D.N.Y. 1999) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). The plaintiff bears the burden of establishing that the court has jurisdiction over the defendants. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing

---

[11] *See also Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1284 (2d Cir. 1994) (applying *E. River* and dismissing shipper's negligent misrepresentation claim against ship inspector after ruling that the inspector owed no independent duty to the shipper apart from those in the parties' contract); *Messina v. Ocean Repair Serv., Co.*, No. 86 Civ. 7898, 1991 U.S. Dist. LEXIS 8135, at *9 -14 (S.D.N.Y. June 17, 1991) (applying *E. River* and holding that maritime negligence claim for improperly performed repair work to a vessel's engine was barred by the economic loss doctrine); *Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping*, 744 F. Supp. 447, 448-50 (S.D.N.Y. 1990) (applying *E. River* and *Employers Ins.* in dismissing tort claims for negligent classification of a vessel because there is "no reason to impose an extra contractual duty on [a classification society] who contracts to provide professional services in a commercial context").

that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-168 (2d Cir. 2015).

Moti's allegations are inadequate in establishing personal jurisdiction over any of the Defendants.  The 21 page Complaint makes only two references to New York.  The first alleges that DNV USA, while organized under the laws of Texas, is "registered to do business in the State of New York," (Exh. 2 Compl. at ¶ 12) and, second, that after this rudder accident the Vessel arrived in Connecticut and was allegedly "attended by a representative from DNV's 'New York Station' as indicated on the DNV Preliminary Survey Report," *id.* at ¶ 17.  Those factual allegations fail to establish a basis for general or specific jurisdiction over any of the Defendants.

The Supreme Court has recently clarified that, other than in an "exceptional case," a corporation will be subject to general jurisdiction only in its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 134 S.Ct. 746, 759, 761 n.19 (2014). (addressing whether a foreign corporation could be subjected to a California court's general jurisdiction based on the contacts of the defendant's in-state subsidiary).  The Court explained that, in determining those exceptional cases, the relevant inquiry is not whether a corporation's activities within a forum are "in some sense continuous and systematic," but rather "whether that corporation's affiliations with the State are so continuous and systematic as to render [it] *essentially at home* in the forum State." [12] *Id.* at 761 & n.19 (emphasis added) (citing *Goodyear Dunlop Tires Operations v. Brown*, 131 S.Ct. 2846, 2851 (2011) (internal quotations omitted)).

---

[12] In concluding that Daimler, a German corporation headquartered in Germany, was not "at home" in California and could not be sued there for injuries plaintiffs attributed to conduct outside the forum, the Court in *Daimler AG* noted the significance of comity issues raised by the fact that Daimler (like DNV Group and DNV GL) was a foreign corporation.  *Daimler AG* 134 S. Ct. at 642 ("Considerations of international rapport . . . reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would not accord with the 'fair play and substantial justice' due process demands.") (citations omitted).

Under *Daimler AG* and *Goodyear*, general jurisdiction does not exist over Defendants in New York as a matter of law because Defendants are not "at home" here.  *See Daimler AG*, 134 S. Ct. at 761 (citation omitted); *Goodyear*, 131 S. Ct. at 2851.  DNV GL Group and DNV GL are incorporated in Norway and maintain their principal place of business in Norway.  Dugstad Decl. ¶¶ 3-4, 23.  As such, they are "at home" in Norway.  DNV USA is a Texas corporation with its principal place of business near Houston, Texas.  Krogsgaard Decl. at ¶ 3.  As such, DNV USA is "at home" in Texas.  Moreover, even assuming that credible allegations of alter ego have been made by Moti (which they have not),[13] none of these Defendants have such continuous and systematic contacts with New York so as to present the exceptional case warranting a finding of general jurisdiction as to render them essentially at home here.  Dugstad Decl. ¶¶ 22-24.  None of the Defendants has an office in New York; none has employees based in New York; none has property in the state.  Dugstad Decl. ¶¶ 22-23; Krogsgaard Decl. ¶¶ 7, 8, *see Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 104 (S.D.N.Y. 2015) (finding a lack of personal jurisdiction based on similar facts).  Additionally, DNV GL and DNV GL Group do not pay taxes in New York, nor perform work in New York, nor are either licensed to do business or maintain a registered agent in New York.  Dugstad Decl. ¶¶ 22-24. "None of the activities of any the defendants is so tied with the state of New York to render general jurisdiction appropriate." *Chatwal Hotels & Resorts*, at 104; *see Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d

---

[13]  Mori's alter ego allegations are both conclusory and implausible as to whether DNV USA is an alter ego of the other defendants.  *See*  Compl. ¶¶ 17-21 (alleging that Defendants take advantage of shared branding in Internet and marketing materials; use common phone numbers and offices in the U.S. with no information as to the foreign defendants operations, if any, at those U.S. locations; and that DNV USA "is controlled and dominated by Defendant Group and/or Defendant DNV GL AS"); *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195-196 (2d Cir. 2010) (finding that no facts alleged in the Complaint plausibly support the inference that SPDC was a mere instrument of its corporate parents where there was "no allegation that SPDC was undercapitalized, failed to maintain corporate formalities, or that its officers ceded control to Shell, from which we might infer domination."); *Felske v. Hirschmann*, 2012 U.S. Dist. LEXIS 29893 at *12 (S.D.N.Y. Mar. 2, 2012) ("Conclusory allegations showing the presence of jurisdiction, particularly those stated only 'upon information and belief' are insufficient to establish . . . personal jurisdiction over the defendant.").

Cir. 2014) (ruling that a foreign bank with four branch offices in the United States, including one in New York, was not subject to general jurisdiction in a New York court).  Moreover, this Court has explicitly found that post-*Daimler* "the mere fact of [Defendant] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation or its principal place of business."[14]  *Chatwal Hotels & Resorts*, at 105.  Therefore, under *Daimler*, there is no general jurisdiction over any of the Defendants.

Moti also has made no allegations that would support a finding of specific or long-arm jurisdiction as to any Defendant.  *See* N.Y. C.P.L.R. §302; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (observing that specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum").  The Vessel was built in South Korea; any survey during construction occurred in South Korea.  It was four years after any construction survey that the rudder incident occurred during transit from Indonesia, and the Vessel was towed to Bridgeport, Connecticut – not New York - for discharge.  *See* Compl. ¶¶ 2, 22, 35-38.  As none of the events leading to the alleged incident occurred in or were related to New York, the exercise of personal jurisdiction would not comport with due process. *See Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2850-51 (2011) (observing that the "assertion of jurisdiction over [an] out-of-state corporation must comply with 'traditional notions of fair play and substantial justice'").  Because there is neither general nor specific jurisdiction over Defendants, Moti's claims against Defendants must be dismissed.

---

[14] *See Brown v. CBS Corp.*, 19 F. Supp. 3d 390, 397 (D. Conn. 2014) (holding that general jurisdiction did not exist over foreign corporation under *Daimler AG* even though the corporation was registered to do business in the forum, designated an agent for service of process there, and did millions of dollars' worth of business, including having 28 employees working at four different cities in the forum, leasing property with its name on a building, having a phone listing, and deriving $160 million in revenue from the forum since 2008).

## IV.     MOTI'S ACTION MUST BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS

The Supreme Court recently clarified that "the appropriate way to enforce a forum selection clause pointing to a foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013).  Here, a valid forum selection clause exists and applies.  Accordingly, this Court should follow the Supreme Court's directive that a binding forum selection clause pointing to an alternate forum should be given "controlling weight in all but the most exceptional cases."  *Id.*[15]

### A.     The Forum Selection Clause In The DNV Rules Is Enforceable Against Moti Under the Doctrine of Direct-Benefit Estoppel

The forum-selection clause in the DNV Rules is binding on Moti under the doctrine of direct-benefit estoppel because Moti's claims in this case are premised on the 2010 Classification Agreement (Exh. 3) which led to the issuance of a Certificate of Interim Class and Appendix for the Vessel.  (Exh. 5).

Under the doctrine of direct-benefit estoppel, a mandatory forum selection clause (such as the one in the DNV Rules) binds a party who did not sign the contract containing that clause if the non-signatory has "embraced the contract" by "knowingly exploiting the agreement containing the [] clause."  *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006) (citations omitted); *see also Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F. 3d 349, 353 (2d Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause.") (citation omitted);

---

[15] *Atl. Marine* "does not appear to alter the materials on which a district court may rely in granting a motion to dismiss based on a forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) (citations omitted) (indicating that the district court should rely on pleadings and affidavits in evaluating a motion to dismiss for *forum non conveniens*).

*LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 155 (E.D.N.Y. 2012) ("a party is estopped from denying a contract provision when it has directly benefited from the contract"). Several courts, including the Second Circuit, have applied the direct-benefit estoppel doctrine to bind non-signatory shipowners to forum selection clauses adopted by classification societies under facts that are materially indistinguishable from, if not identical to, those here.

In *Tencara*, the Second Circuit relied on direct-benefit estoppel to bind non-signatory vessel owners to a forum selection clause in a contract between a classification society and a shipyard for the building of a racing yacht. *Tencara*, 170 F.3d at 350, 353. The construction contract specified that, among other things, the yacht would be "classed" according to the quality standards and norms of the American Bureau of Shipping ("ABS"), a classification society similar to DNV GL. *Id.* To obtain an ABS classification for the yacht, the shipyard entered into a contract with ABS providing that all disputes arising under the agreement were to be arbitrated in New York. *Id.* at 351. As the Second Circuit recognized, the coverage that the owners obtained on the yacht from a variety of insurers (the "underwriters") was "premised on the existence of valid classification." *Id.* The yacht was ultimately "classed", and, after delivery, the yacht suffered significant damage, which a survey indicated was a result of defective design and poor construction. *Id.* The shipyard and shipowners sued in foreign jurisdictions and ABS subsequently brought an action in New York federal court to compel arbitration in New York pursuant to the arbitration clause in the contract between the shipyard and ABS. *Id.* at 351-52. The shipowners and underwriters in *Tencara* argued that they were not required to arbitrate in New York because they were not signatories to the contract between the shipyard and ABS, but the Second Circuit rejected their argument under the doctrine of direct-benefit estoppel. *Id.* at 353 (ruling that the shipowners received direct benefits flowing from the performance of the

-18-

contract between the shipyard and ABS, including (1) significantly lower insurance rates on the yacht, and (2) the ability to sail under the French flag).

Similarly, in *Hellenic* the Fifth Circuit applied direct-benefits estoppel to enforce the identical forum selection clause that DNV GL is seeking to enforce against Moti in this case. Hellenic, a ship-owning consortium, purchased a ship pursuant to a contract that designated Det Norske Veritas AS ("DNV") as the classification society for the ship. *Hellenic*, 464 F.3d at 515. Prior to Hellenic's purchase of the ship, the shipbuilder, Inlet, contracted with DNV to provide class related inspections and certifications. DNV subsequently issued a Confirmation of Class Certificate to Inlet certifying that, immediately prior to the turnover of the ship to Hellenic, the ship was reasonably fit for her intended use and that there were no conditions of class recorded against her. The ship's DNV classification certificate stated that it was "[i]ssued under the provisions of the Rules of Det Norske Veritas." *Id.* at 516. On the day of the ship's purchase, inspectors found several deficiencies that allegedly should have been revealed by DNV's inspections and which predated DNV's confirmation of class certificate for the ship. Hellenic then filed suit against DNV seeking recovery for tortious misrepresentation, arguing that it would not have purchased the ship from Inlet but for the assurances from DNV as to the seaworthy condition of the ship. *Id.* at 516. DNV moved to dismiss the action pursuant to the forum selection clause in the DNV Rules requiring disputes under these rules to be resolved by the Municipal Court of Oslo. *Id.* at 517.[16]

The Fifth Circuit in *Hellenic* applied *Tencara* and concluded that even though Hellenic was not a signatory to the DNV-Inlet contract, Hellenic was bound by the contract's forum-

---

[16] That is the identical language from the DNV Rules incorporated in the 2010 Classification Agreement between DNV and the Builder as well as in the Classification Certificates issued by DNV GL for Moti's Vessel. *See* Dugstad Decl. ¶¶ 11, 12.

selection clause under the doctrine of direct-benefit estoppel.  *See Hellenic*, 464 F.3d at 520.  The

Fifth Circuit stated that Hellenic "cannot embrace the Rules by bringing a claim . . . alleging, in

essence, a violation of the DNV Rules without accepting the consequence of those Rules."  *Id.* at

520 (citations omitted).  The Fifth Circuit thus held that "Hellenic is bound by the DNV forum-

selection clause."  *Id.* at 520.

Just last year, the Fifth Circuit expanded *Hellenic* by applying direct-benefits estoppel to

bind a shipowner to a classification society's rules in a shipbuilding contract to which the

shipowner was not a signatory and (unlike the ship owner in *Hellenic*) had not even received a

class certificate from the classification society.  *See In re Lloyd's Register N. Am., Inc*., 780 F.3d

283, 291, 292 (5th Cir. 2015) (holding that even though the shipowner, Pearl Seas, was not a

signatory to the contract between Irving, the shipbuilder, and Lloyd's, the classification society,

direct-benefits estoppel applied because Lloyd's was performing its services for the benefit of

Pearl Seas).  The Fifth Circuit held that "[b]ecause Pearl Seas knew about the contract between

Irving and [Lloyd's], acted to exploit it, and gained a benefit from it, Pearl Seas is bound by the

forum-selection clause in the Classification Contract."  *Id.* at 292.[17]

Similarly, the District Court in *Quail Cruise Ship Mgmt. Ltd. v. Agencia de Viagens CVC*

*Tur Limitada*, No. 09-23248-CIV, 2010 U.S. Dist. LEXIS 36689 (Apr. 14, 2010), applied direct-

benefit estoppel to dismiss a shipowner's claims against Lloyd's based on a forum selection

clause in Lloyd's internal rules that were incorporated into agreements between Lloyd's and a

management company for the ship that was acquired.  *Id.* at *15-16.  As the District Court

---

[17] *See also Vloeibare Pret Ltd. v. Lloyd's Register N. Am.*, 606 Fed. Appx. 782 (5th Cir. 2015) (affirming the district court's dismissal of a shipowner's tort action against Lloyd's on the basis of *forum non conveniens* because the shipowner was bound to a forum selection clause specifying an alternate forum in a contract between Lloyd's and a shipbuilder on the ground of direct-benefit estoppel).

explained, in order to maintain its claims against Lloyd's, the shipowner Quail was required to allege that it foreseeably relied on Lloyd's representations when it decided to purchase the ship; that Lloyd's services were conducted pursuant to the rules, and that but for Lloyd's services Quail would not have purchased the *Pacific*. *Id.* at *14, *15.

### B. Moti's Claims Against DNV GL Are Just Like the Shipowners' Claims in *Tencara, Hellenic, Lloyd's,* and *Quail*

Like the non-signatory shipowners in *Tencara*, *Hellenic*, *Lloyd's*, and *Quail* who benefitted from the classification society's contract with the shipbuilder, Moti directly benefited from DNV GL's services under the DNV Rules, and as a result it is bound by the forum selection clause in the DNV Rules.  In fact, Moti implicitly admits that it obtained the benefits of DNV GL's classification when it purchased the Vessel and that Moti would not have purchased the Vessel but for DNV GL's classification services.  *See* Compl. ¶ 58 (alleging that it would not have purchased the ship without being given the comfort that "the plans for the ship had been reviewed and approved by Defendants in advance of Owner's executing the shipbuilding contract"); and ¶ 83 (alleging that Moti "justifiably relied upon Defendants' representations concerning the suitability of the Vessel to operate as a bulk carrier . . . .").  Moreover, without a valid Classification Certificate from DNV GL, Moti could not obtain insurance for the Vessel, and thus it could not engage in trade.  *See* Dugstad Decl. ¶ 9; *Tencara*, 170 F.3d at 353.  Moti cannot accept the benefits of the 2010 Classification Agreement and the Certificate of Interim Class and Appendix for the Vessel, but reject the obligations imposed by the very DNV Rules pursuant to which the Classification Certificate was issued.  By accepting the benefits of

classification for the Vessel, Moti is estopped from objecting to application of the forum selection and choice of law provisions in the DNV Rules.[18]

## C.      Moti Cannot Avoid The Forum Selection Clause Through Artful Pleading

To avoid dismissal of its action in favor of litigation in Norway, Moti may argue it is asserting tort claims, not contract claims, and thus direct-benefits estoppel cannot apply.  The Second Circuit, however, has recognized that a forum selection clause cannot be defeated by artful pleading of claims not based on the agreement containing the clause.  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir.1993); *see also Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) ("[A] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship.") (citation omitted).

Courts repeatedly reject attempts by shipowners to avoid forum selection clauses and the application of direct-benefit estoppel through clever pleading.[19]   *Quail* is particularly on point.

---

[18]  *See Lloyd's*, 780 F.3d at 291-92 (holding that even though the shipowner was not a signatory to the contract between the shipbuilder and the classification society, direct-benefits estoppel applied because Lloyd's was performing its services for the benefit of the owner); *Hellenic*, 464 F.3d at 518-20; *Tencara*, 170 F. 3d at 353; *Quail*, 2010 U.S. Dist. LEXIS 36689 at *14-16; *LaRoss Partners*, 874 F. Supp. 2d at 155.

[19]  *See, e.g., Hellenic*, 464 F.3d at 519-20 ("Although sounding in tort, Hellenic's claim is based upon DNV's failure to follow its own Rules in classing the [ship].  Accordingly, if Hellenic has a claim for DNV's misrepresentation, it is only because DNV failed to adhere to its Rules when it classed the [ship] as a 1A1 Bulk Carrier.") (citations omitted); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, No. H-04-3010, 2005 U.S. Dist. LEXIS 34023, at *5-6 (S.D. Tex. July 19, 2005) ("Hellenic responds that its Complaint carefully avoided any reference to breach of contract, that the tortious conduct by DNV occurred before there was any contractual relationship between DNV and Hellenic, and that Hellenic cannot properly be considered to have been subject—at the present time—to a theory of implied contract, third party beneficiary, or estoppel. . . . Whether Hellenic's claim for relief sounds in contract or tort, the operative language in DNV's Rules—which refers to 'any dispute'—requires Hellenic to seek relief in Municipal Court in Oslo, subject to Norwegian law."); *Quail*, 2010 U.S. Dist. LEXIS 36689, at *15 (rejecting shipowner's argument since the claims sound in tort, not contract, it was not estopped from denying the forum selection clause); *accord Vloeibare Pret, Ltd. v. Lloyd's Register N. Am., Inc.*, 606 Fed. Appx. 782, 785 (5th Cir. 2015); *Vloeibare Pret Ltd. v. Lloyd's Register N. Am., Inc.*, No. 4-13-3653, 2014 U.S. Dist. LEXIS 109558, at *11-12 (S.D. Tex. Aug. 8, 2014)), *aff'd Vloeibare Pret, Ltd. v. Lloyd's Register N. Am., Inc.*, 606 Fed. Appx. 782 (5th Cir. 2015).

There, the shipowner Quail (just like Moti here) asserted claims against Lloyd's for (1) recklessness and (2) negligence and negligent misrepresentations. *See Quail*, 2010 U.S. Dist. LEXIS 36689, at *8. Quail argued that it was not estopped from denying the forum selection clause in Lloyd's internal rules and regulations because its claims sounded in tort, not contract. *Id.* at *15. The district court concluded, however, that this argument already had been rejected by the Fifth Circuit in *Hellenic*, which "found that direct-benefit estoppel was applicable because the plaintiff's claim was based on the defendant's failure to follow its own rules in classifying the plaintiff's vessel." *Id.* at *15 (citing *Hellenic*, 464 F.3d at 519).

Moti's claims are based on DNV GL's alleged failures in surveying and classifying the Vessel. Indeed, throughout its Complaint, Moti alleges that DNV GL's classification services were a key factor in its purchase of the Vessel. *See* Compl. ¶¶ 27, 30, 31, 33, 83. Moreover, Moti benefitted from DNV GL's classification services, *see*, Compl. ¶¶ 58, 83. Regardless of how Moti now attempts to characterize its claims, Moti's claims are premised on DNV GL's classification services rendered pursuant to the DNV Rules. Accordingly, Moti should be required to litigate its claims in Norway, not New York.

### D. *Atlantic Marine* Requires Enforcement of the Forum Selection Clause in the DNV Rules

A binding forum selection clause pointing to an alternate forum should be given "controlling weight in all but the most exceptional cases." *Atl. Marine*, 134 S. Ct. at 581. In an ordinary case involving a motion to dismiss on *forum non conveniens* grounds, the district court would weigh the parties' private interests and the public interest factors in determining whether to enforce the forum selection clause. *Id.* But where (as here) there is a valid forum-selection clause, the "calculus changes"—the "plaintiff's choice of forum merits no weight," and the

district court "should not consider arguments about the parties' private interests." *Id.* at 581-82. Instead, "a district court may consider arguments about public-interest factors *only*." *Id.* at 582 (emphasis added).  The mere fact that a party, such as Moti, is not a signatory to the forum selection clause does not change the analysis.  *See Vloeibare Pret*, 606 Fed. Appx. at 786 ("VP [the shipowner] argues that the magistrate judge erred by failing to consider the private interests of the parties because it was not a *signatory* to the forum selection clause.  This argument is off target . . . Here, VP is bound to the forum selection clause by direct-benefit estoppel.  Although not a signatory to the agreement, it is nonetheless bound to the same extent as a signatory.") (citing *Hellenic* 464 F.3d at 520).

Under the choice of law provision in the DNV Rules, Norwegian law applies to Moti's claims, and a Norwegian court is more suited to applying Norwegian law than a New York court. *See Homen v. M/V SCM Tepuy II*, No. 05-61626-CIV, 2006 U.S. Dist. LEXIS 93061, at *27-28 (S.D. Fla. Aug. 1, 2006) (holding that public interest factors militated in favor of trial in Norway in a controversy between a Norwegian defendant and Montenegrin plaintiff involving an alleged accident on a Norwegian ship); *Tjontveit v. Den Norske Bank ASA*, No. H-96-3579, 1998 U.S. Dist. LEXIS 11929, *49 (S.D. Tex. Mar. 27, 1998) ("[T]his court finds that the interests of both the parties and the public are better served by dismissing the instant action on the basis of forum non conveniens.  The courts of Norway provide an available, adequate, and more appropriate forum for the resolution of this dispute.").

Moti cannot demonstrate that any public interest factors are so compelling to suggest that this is the type of "unusual case" where a forum selection clause should not control.  *See Atlantic*

-24-

*Marine*, 134 S. Ct. at 582.[20]   As such, Moti's claims should be dismissed on *forum non conveniens* grounds.

## CONCLUSION

For all the foregoing reasons, Moti's claims against Defendants should be dismissed.

Dated:  New York, New York
        March 21, 2016

                                        Respectfully submitted,


                                        /s/ John J. Reilly
                                        John J. Reilly
                                        Corrine A. Irish

                                        SQUIRE PATTON BOGGS (US) LLP
                                        30 Rockefeller Plaza
                                        New York, New York 10112
                                        Tel:  212-872-9800
                                        Fax:  (212) 872-9815
                                        john.reilly@squirepb.com
                                        Corrine.irish@squirepb.com

                                        Attorneys for Defendants
                                        DNV GL GROUP AS, DNV GL AS,
                                        DET NORSKE VERITAS (USA) INC.

---

[20] The public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).