UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOTI SHIPPING LTD.,

Plaintiff,

– against –

DNV GL GROUP AS f/k/a DET NORSKE
VERITAS AS, DNV GL AS, DET NORSKE
VERITAS (USA) INC., #50, unknown
companies in the DNV GL GROUP as
corporate family,

Defendants.

Civil Action No. 1:16-cv-00138-RA

**DECLARATION OF
GEIR DUGSTAD
PURSUANT TO 28 U.S.C. § 1746**

Geir Dugstad declares under penalty of perjury under the laws of the United States of America that:

1.      I am employed by Defendant DNV GL AS (hereinafter "DNV GL") as Director, Ship Classification.  I have been employed by DNV GL for over 20 years.

2.      The information in this Declaration is based on my personal knowledge with and experience in DNV GL, and my understanding of commercial shipping and the role of class. I am submitting this Declaration in support of the motion by Defendants in this action for an order dismissing the Complaint of Plaintiff Moti Shipping Ltd. ("Moti").

### Overview of Corporate Relationships

3.      DNV GL, which formerly was known as Det Norske Veritas AS, is a Norwegian corporation headquartered in Høvik, Norway. DNV GL is a wholly-owned subsidiary of Defendant DNV GL Group AS (hereinafter "DNV GL Group").

4.      DNV GL Group is a Norwegian corporation headquartered in Høvik, Norway. Contrary to the allegations in the Complaint, DNV GL Group was not formerly known as "Det Norske Veritas AS."

5.      Defendant Det Norske Veritas (U.S.A.), Inc. (hereinafter "DNV USA") is a Texas corporation with its principal place of business in the greater Houston, Texas area. DNV USA is wholly-owned by Defendant DNV GL.

### Overview of DNV GL's Classification Services and the DNV Rules

6.      DNV GL is engaged, *inter alia*, in ship classification services. As more fully described below, as a classification society, DNV GL's role is twofold: (i) to establish requirements for designers' and builders' design and construction of ships, as well as for ships in service, and (ii) to provide reasonable assurance that the requirements are met during design, construction and operation of the ship, by applying a spot-check based methodology. These follow from the Rules for Classification of Ships (hereinafter the "DNV Rules"). DNV GL may also (in provision of statutory services) issue certain international statutory certificates on behalf of a ship's flag state.

7.      DNV GL does not design ships for owners or shipbuilders nor guarantee that the ships are designed and built in compliance with the requirements following from the DNV Rules; such remains the responsibility of the designer and the builder.

8.      Once a ship in DNV GL class is delivered from the builder to the owner, the owner has the responsibility to ensure that the ship complies with the DNV Rules during the operative phase. DNV GL verifies that a ship complies with the applicable parts of the DNV Rules via a fleet in service survey. If a ship is not in compliance with the DNV Rules at the time of a fleet in service survey, DNV GL will issue a statement of non-compliance - or

010-8200-7929/7/AMERICAS

Condition of Class - to the ship. It is then the responsibility of the owner to address the non-compliance in order to have the ship brought into compliance with the DNV Rules.

9.      Ship classification provides a number of major benefits for shipowners. For example, unless a ship is entered with a recognized classification society, such as DNV GL, and has a valid Classification Certificate, the ship will usually not obtain insurance.

10.     With respect to ship classification, each Classification Certificate issued by DNV GL expressly states that the Certificate is "[i]ssued under the provisions of the Rules of DNV".

11.     The DNV Rules provide for the exclusive jurisdiction in the Municipal Court in Oslo, Norway to resolve any dispute arising between DNV GL and the owner of a ship in class with DNV GL.  The DNV Rules expressly provide that:

**A200   Governing Law**

201     These rules, the classification of the ship or unit and the relationship between the Society and other parties shall be governed by Norwegian law.

**A300   Venue**

301     Any dispute arising in relation to or as a consequence of these Rules shall only be resolved by the courts of Norway, the Municipal Court of Oslo being the proper venue.

*See* Exh. 1, Excerpt from DNV Rules. Those provisions of the DNV Rules have been in effect  since at least 2007 and, in fact, for much longer than that. A true and correct copy of the relevant  excerpt from the DNV Rules is submitted as Exhibit 1.  All DNV Rules are available at dnvgl.com.

12.     To ensure that disputes, which typically involve entities and individuals from around the world, are resolved in a single jurisdiction with application of a consistent body of substantive law and procedures as well as interpretation of the DNV Rules, DNV GL  has

required that suits arising from or related to the issuance of its Classification Certificates, performance by DNV GL and application of the DNV Rules must be brought in Oslo, Norway, and decided under Norwegian law. The forum selection clause and choice of law provision in the DNV Rules are important to DNV GL. Those provisions have been included in the DNV Rules for many years, and, certainly, well before the M/V DARYA MOTI was entered into class with DNV GL.

### The Relevant Contacts Relating to the Construction of the M/V DARYA MOTI

13.    Moti alleges that the bulk carrier M/V DARYA MOTI (the "Ship") was built by non-party STX Offshore & Shipbuilding Co. Ltd. (the "Builder") in South Korea in 2010, pursuant to a shipbuilding contract entered into between Moti and the Builder on September 30, 2009. *See* Exh. 2, Compl. ¶ 22.

14.    On or about May 14, 2010, the Builder entered into a contract with DNV GL, represented by DNV Korea Ltd. ("DNV Korea"), to provide classification services for the completed Ship to be delivered to Moti, *i.e.*, verification that the Ship that the Builder delivered to Moti was in compliance with the DNV Rules. *See* Standard Agreement for Classification of Newbuilding Between STX Offshore & Shipbuilding Co., Ltd. and Det Norske Veritas AS ("2010 Classification Agreement"). A true and correct copy of the 2010 Classification Agreement is submitted as Exhibit 3.

15.    That 2010 Classification Agreement was entered into following an October 14, 2009 request for classification submitted by the Builder to DNV GL ("the 2009 Classification Request"). A true and correct copy of the 2009 Classification Request is submitted as Exhibit 4.

16.    Section 2.1 of the 2010 Classification Agreement (Exh. 3) states that: "The DNV Rules for Classification of ships, dated Jan. 2007, shall apply including applicable Classification

Notes and Standards for Certification issued by DNV. These rules are hereinafter referred to as the RULES." This provision further specifies that "[i]n case of contradiction between this AGREEMENT and the RULES, the RULES shall prevail."

17.     The Ship was delivered by the Builder to Moti on or about October 21, 2010. On the date of delivery, DNV GL issued a Certificate of Interim Class and an Appendix to the Certificate (Certificate of Interim Class and Appendix) certifying that the Ship's hull, machinery and equipment are in compliance with the applicable Rule requirements for the following class notation: "1A1 Bulk Carrier ESP ES(S) CSR BC-A Holds 2, 4 and 6 may be empty; BIS TMON BWM-E(f) E0 GRAB[20]." A true and correct copy of the October 21, 2010 Certificate of Interim Class and Appendix is submitted as Exhibit 5.

18.     The Certificate of Interim Class and Appendix was issued "under the provisions of the Rules of Det Norske Veritas." Exh. 5. As noted, those Rules require that all suits be brought in the Municipal Court in Oslo, Norway pursuant to Norwegian law. This Certificate also includes a limitation of liability for negligence not to exceed an amount equal to ten times the fee charged for the service in question, not to exceed $2 million dollars; and limited only to direct loss or damage.

19.     After Moti took delivery of the Ship, DNV GL continued to provide Moti with classification services for the Ship, pursuant to the DNV Rules. Moti entered into an agreement with DNV GL for classification and statutory surveys for the Ship from August 1, 2011 to July 31, 2016 ("the 2011 DNV GL-Moti Agreement"). A true and correct copy of the 2011 DNV GL-Moti Agreement is submitted as Exhibit 6. Section 10 of the 2011 DNV GL- Moti Agreement contains a forum selection clause requiring disputes arising out of that agreement to be settled by arbitration in Oslo, Norway.

20.     On July 16, 2015, *i.e.*, *after* the January 2014 incident complained of, Moti entered into a Periodical Service Agreement with DNV GL (the "2015 Periodical Service Agreement"). A true and correct copy of the 2015 Periodical Service Agreement is submitted as Exhibit 7. The 2015 Periodical Service Agreement is effective from July 1, 2016 to June 30, 2021 and replaces the existing 2011 DNV GL-Moti Agreement. Annex 1 to the 2015 Periodical Service Agreement incorporates the DNV Rules. Annex 4, Section 11.2 contains a forum selection clause stating that "[a]ny dispute arising in relation to or as a consequence of this Agreement, which cannot be settled amicably through negotiations with the parties, shall be subject to the courts of Oslo."

21.     Unlike DNV GL, DNV GL Group is not an operative entity involved in ship classification services in general, and it did not have any involvement with the Ship in particular.

22.     DNV GL Group and DNV GL do not maintain any offices, places of business, post office boxes, or telephone listings in New York, and have never done so.

23.     DNV GL Group and DNV GL are incorporated in Norway and maintain their principal place of business in Norway. Given their lack of contacts with New York, neither DNV GL Group nor DNV GL considers itself at home in New York. Moreover, to my best knowledge, after a thorough investigation:

    a.     DNV GL Group and DNV GL have no real estate or other interest in property in New York, and have not had real estate or interest in property in New York;

    b.     DNV GL Group and DNV GL have no obligation to pay, and do not pay, any taxes in New York;

- 6 -

c.      DNV GL Group and DNV GL have no employees in New York.

24.     DNV GL Group and DNV GL are not licensed to do business in New York and do  not maintain a registered agent for service of process in New York.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Høvik, Norway

Executed on March _18_, 2016

**GEIR DUGSTAD**

- 7 -